■ ANTHONY F. LoFRISCO, Appellant, v WINSTON & STRAWN LLP, Respondent. [839 NYS2d 481]—

Judgment, Supreme Court, New York County (Helen E. Freedman, J.), entered March 7, 2006, which, to the extent appealable, dismissed the first and second causes of action of the verified amended and supplemental complaint pursuant to an order, same court and Justice, entered December 14, 2005, denying plaintiff's motion for summary judgment and granting defendant's cross motion for summary judgment to the extent of determining that defendant did not breach plaintiff's contractual right to compensation for defendant's fiscal years ending in 2003 and 2004, unanimously reversed, on the law, without costs, the judgment vacated to the extent it dismissed the first and second causes of action, defendant's cross motion for summary judgment denied insofar as addressed to those causes of action, such causes of action reinstated, and the matter remanded for further proceedings. Appeal from the aforesaid order unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

In 1991, plaintiff, a "rainmaking" attorney whose clients included General Electric, became a partner of defendant Winston & Strawn LLP (the Firm). In 1994, the Firm entered into a special agreement with plaintiff (the 1994 agreement) to

govern his compensation for fiscal years 1995 and thereafter.[1] The 1994 agreement, which afforded plaintiff more favorable treatment than other partners in the determination of compensation, recited that the Firm was entering into it "primarily to induce [plaintiff] to exert [his] best efforts to build a long term relationship between the Firm and the clients mentioned [in the agreement], as well as new clients, and to facilitate the transfer of these relationships to other partners of the Firm."

The 1994 agreement "guaranteed" plaintiff, for each year from 1995 through 2000, "base compensation" based on the maximum number of profit-sharing "points" granted to any other partner. The 1994 agreement also entitled plaintiff to "additional compensation" calculated by applying a formula to the total fees collected from his clients, provided that such fees exceeded $5 million. The additional compensation was calculated based on all fees collected from the specified clients, whether or not plaintiff had any involvement in the matters that generated the fees. The 1994 agreement further provided that plaintiff's base and additional compensation would be reduced by 25% in fiscal year 2001, by 50% in 2002, by 75% in 2003, and by 100% in 2004 and thereafter. Although the Firm generally requires its partners to undergo this "decompression" of profit-related income beginning with the year they turn 65, the 1994 agreement, as another special accommodation to plaintiff, delayed the start of his decompression until the year he turned 67.[2]

In 2000, plaintiff told the Firm that he wished to renegotiate the 1994 agreement to avoid decompression. The Firm, concerned that plaintiff might leave if not again accommodated, ultimately entered into a letter agreement with plaintiff, dated January 29, 2001 (the 2001 agreement), amending the 1994 agreement. The first paragraph of the 2001 agreement provides, in substance, that the Firm will award plaintiff a bonus cancelling out the 25% decompression step-down of his compensation for fiscal year 2001 contemplated by the 1994 agreement. With regard to subsequent years, paragraph 2 of the 2001 agreement provides as follows: "The [Executive] Committee [of the Firm] will consider your request for similarly structured bonus payments in fiscal years subsequent to January 31, 2001 on a year by year basis. Specifically, that consideration will consist of the

**1.** Unless otherwise indicated, a reference to a year means the Firm's fiscal year ending on January 31 of that calendar year.

**2.** Decompression does not culminate in mandatory retirement, since it does not affect compensation based on the work a partner actually performs. Plaintiff's compensation for work he performed apparently is not at issue in this action.

same analysis of your contributions to the Firm as conducted in this fiscal year, as well as prior fiscal years."

For fiscal year 2002, the Firm again awarded plaintiff a bonus that substantially cancelled out the 50% decompression step-down of his compensation for that year scheduled by the 1994 agreement.[3] However, the Firm refused to follow this practice in awarding bonuses for 2003 and 2004. For each of those years, the Firm awarded plaintiff, over his protest, a bonus substantially smaller than the scheduled reduction of his compensation set forth in the 1994 agreement.

In this action, plaintiff contends that the Firm breached the above-quoted paragraph 2 of the 2001 agreement by failing to award him bonuses fully cancelling out the decompression reductions of his compensation for 2003 (the first cause of action) and 2004 (the second cause of action). Plaintiff alleges that the shortfalls for 2003 and 2004 were $1,955,291 and $4,432,432, respectively. The Firm takes the position that the 2001 agreement does not entitle plaintiff to a bonus of any particular amount for years subsequent to 2001, but requires the Firm only to exercise good faith in giving discretionary consideration to his bonus requests for those years.

After discovery, each side moved for summary judgment. Supreme Court granted the Firm's motion, concluding that the 2001 agreement unambiguously makes the award of post-2001 bonuses subject to the Firm's discretion. The court further held that the record established that the Firm, in considering plaintiff's requests for bonuses for 2003 and 2004, had exercised its discretion in good faith. We now reverse on the ground that paragraph 2 of the 2001 agreement is ambiguous, in that each party's interpretation finds some support in the contractual language, and the interpretation of the provision therefore presents a triable issue of fact.

The view of the Firm, which Supreme Court adopted, is that the Firm is vested with discretion to determine the amount of plaintiff's bonus for each year after 2001, based on a holistic evaluation of the full range of his contributions to the Firm. This interpretation—under which the only benefit plaintiff apparently gained from the 2001 agreement was an additional one-year deferral of decompression—finds support in the paragraph's first sentence: "The Committee will *consider* your *request* for similarly structured bonus payments in fiscal years subsequent to January 31, 2001 *on a year by year basis*"

---

**3.** A dispute concerning the precise amount of the 2002 bonus has been settled, and plaintiff's cause of action concerning that year's bonus has been dismissed by stipulation.

(emphasis added). Each italicized word or phrase carries the implication that the amount of the bonus is to be determined in the Firm's discretion, not by application of a rigid formula to quantitative inputs, and that the total amount of compensation cannot be predicted based solely on the relevant financial data.

On the other hand, the second sentence of paragraph 2 provides that the Firm's "consideration [of plaintiff's request] *will* consist of *the same analysis of your contributions to the Firm as conducted in this fiscal year, as well as prior fiscal years*" (emphasis added). The word "will" is mandatory, not permissive. Further, the phrase "the same analysis . . . as conducted in this fiscal year, as well as prior fiscal years" refers to years in which the language of the 1994 agreement—as well as substantial extrinsic evidence of the parties' understandings and course of conduct—suggests that plaintiff's compensation was determined by the 1994 agreement's formulas for base and additional compensation. The "same analysis" language clearly points to plaintiff's position that, unless he is in breach of his partnership obligations (which is not alleged), he is entitled to a bonus that will bring his compensation to the level that would have resulted from application of the formulas set forth in the 1994 agreement, without giving effect to the decompression provision.[4]

Since paragraph 2 of the 2001 agreement is reasonably susceptible to more than one interpretation, and the difficulty is not resolved by reading the agreement as a whole, the provision is ambiguous and neither side is entitled to summary judgment construing it as a matter of law (*see Lantis Eyewear Corp. v Luxottica Group*, 294 AD2d 127, 128 [2002]; *Nausch v AON*

4. To the extent the 1994 agreement may itself be ambiguous as to the kind of "analysis" it required, such ambiguity must also be resolved at trial. In this regard, we note that the parties dispute what the actual practice was under the 1994 agreement, with the Firm claiming, and plaintiff denying, that the Firm conducted a holistic evaluation of plaintiff's contributions. Moreover, contrary to the Firm's contention, plaintiff did not admit at his deposition that the Firm awarded him compensation under the 1994 agreement from 1995 through 2000 (i.e., before decompression went into effect) based on such holistic evaluations of his contributions. Rather, plaintiff expressed his understanding that his entitlement to additional compensation under the 1994 agreement was conditioned on the fulfillment of his obligation under paragraph 7 of that agreement "to continue the type and level of effort [he had] exerted on behalf of the Firm as a practicing attorney since [he] joined Winston & Strawn." Thus, plaintiff took the position that the fulfillment of his obligations under paragraph 7 was a precondition to the application of the 1994 agreement's additional compensation formula, not part of the formulaic analysis itself. The Firm, although critical of plaintiff's performance as a partner, has not claimed that he was in breach of paragraph 7 of the 1994 agreement during either of the two years at issue.

*Corp.*, 283 AD2d 353 [2001]; *cf. Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986]). Accordingly, we reverse the judgment for the Firm and remand the matter for a trial to determine the correct interpretation of paragraph 2 of the 2001 agreement in light of all relevant circumstances.[5]

In the event the trier of fact determines that the award of bonuses under paragraph 2 of the 2001 agreement was discretionary, then, contrary to plaintiff's arguments, and as Supreme Court found, the record establishes, as a matter of law, that the Firm exercised its discretion in good faith in awarding the 2003 and 2004 bonuses. In exercising any discretion it had under the 2001 agreement, the Firm would have been entitled to consider the following undisputed facts: in 2003, General Electric transferred to another law firm the major case on which plaintiff had been partner-in-charge; after the transfer of that matter, plaintiff failed to generate any substantial business from General Electric or any other client; in both 2003 and 2004, more than 95% of the Firm's revenue from General Electric arose from corporate transactional work in which plaintiff (a litigator) had no involvement; and his billable hours fell to extremely low levels in both years (408 in 2003, 56 in 2004). That certain partners may have subjectively resented plaintiff's special deal with the Firm, or questioned the wisdom of the 2001 agreement after Jack Welch (with whom plaintiff had a relationship) retired as chairman of General Electric in September 2001, does not create an issue of fact as to whether the Firm acted in bad faith. Neither is such an issue created by plaintiff's unsupported speculation that the Firm reduced his bonuses to recoup amounts previously paid under the 1994 agreement. The Firm's good faith in exercising any discretion it may have had is underscored by the fact that it awarded plaintiff substantial bonuses for both years in question ($1,300,000 in 2003 and $350,000 in 2004). Notably, the 2004 bonus was just below the $375,000 paid to the Firm's second-highest compensated fully decompressed partner, who billed 1,144 hours that year. Concur—Friedman, J.P., Williams, Gonzalez, Sweeny and McGuire, JJ. [*See* 10 Misc 3d 1066(A), 2005 NY Slip Op 52172(U).]

---

5. We note that plaintiff claims that the Firm breached its fiduciary duty, during the negotiation of the 2001 agreement, by allegedly failing to advise him of its interpretation of paragraph 2 of the agreement, even though the Firm allegedly was aware that plaintiff had a different understanding of that provision. Plaintiff is free to argue at trial that these factual contentions, if true, should be considered by the factfinder in resolving the ambiguity in paragraph 2 of the agreement.