■ THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as Successor Indenture Trustee to JPMORGAN CHASE BANK N.A., Respondent, v MERRILL LYNCH CAPITAL SERVICES INC., Appellant, and AG FINANCIAL PRODUCTS, INC., et al., Respondents, et al., Defendants. [953 NYS2d 36]—

Between September 2005 and September 2006, defendants Taberna Preferred Funding III, Ltd., Taberna Preferred Funding IV, Ltd., Taberna Preferred Funding VI, Ltd., and Taberna Preferred Funding VII, Ltd., issued notes pursuant to indentures between themselves and JPMorgan Chase Bank, N.A. Plaintiff Bank of New York Mellon Trust Co., N.A. (BONY) succeeded JPMorgan as trustee under the indentures. Because the rate of interest on the notes was a floating rate, the Taberna entities chose to hedge against the risk that the interest rates would

rise too high by entering into hedge agreements with defendant Merrill Lynch Capital Services, Inc. The hedge agreements for Taberna III, IV, and VI provided that in the event of inconsistency between the indentures and the hedge agreements, the hedge agreements will prevail; the hedge agreement for Taberna VII does not contain this provision. The tiebreaker provisions are crucial because of the conflicting terms in the indentures and the hedge agreements regarding Merrill Lynch's right to terminate the hedge agreements in the event of a default. When Taberna defaulted on its payment obligations under the hedge agreements, Merrill Lynch sought to terminate the agreements and this interpleader action was commenced. We hold that Merrill Lynch has the right to terminate the agreements that contain the tie-breaker provisions, but that a determination of its right to terminate in the event of a default under the remaining agreement cannot be made on this record.

This action has its roots in 2009 and 2010, when interest rates dropped significantly, and the Taberna entities defaulted on hedge payments due to Merrill Lynch. When the Taberna entities failed to cure the defaults, Merrill Lynch designated "Early Termination Dates" for each transaction and notified the Taberna entities that they owed it early termination payments. Defendant noteholders and defendant AG Financial, which had entered into credit default swaps with the noteholders of the Taberna III, IV, and VI notes instructed BONY not to pay. BONY commenced this action, seeking direction from the court as to how to disburse the amounts it had collected from the Taberna transactions.

The noteholders and AG Financial moved for summary judgment declaring that Merrill Lynch has no right to terminate the hedge agreements upon a default or to receive termination payments. Merrill Lynch moved for summary judgment declaring in its favor as to the Taberna III, IV, and VI transactions.

Each hedge agreement consists of the ISDA Master Agreement, a Schedule, a Credit Support Annex, and Confirmations. Each indenture sets forth a Priority of Payments specifying that Merrill Lynch is entitled to receive payments before the noteholders but after certain other parties (§ 11.1 [a] [I]). Section 11.1 (a) (immediately preceding the priority list) states that the trustee's obligation to disburse amounts on each distribution date is "subject to the other clauses of this Section 11." Section 11 (j) of the Taberna III, IV and VI indentures and section 11.1 (1) of the Taberna VIII indenture states that "[i]n the event that the Issuer defaults in the payment of its obligations under any Hedge Agreement, such default shall not entitle the Hedge Counterparty to terminate such Hedge Agreement."

However, the Master Agreement gives the non-defaulting party the "Right to Terminate Following Event of Default." Moreover, the Schedules for Taberna III, IV, and VI provide that "[i]n the event of any inconsistency between the provisions of the Indenture and this Agreement, this Agreement will prevail" (§ 5 [a] [ii]).* The Schedule for Taberna VII does not contain this provision. The Schedules for Taberna III, IV, and VI state that Merrill Lynch "acknowledges that any amount payable to it pursuant to this Agreement shall be subject to the Priority of Payments" (§ 5 [m]). The Schedule for Taberna VII does not contain this provision.

With respect to Taberna VII, we hold that neither side is entitled to summary judgment. Within the four corners of the contract, there is support for both sides' positions. "Summary judgment is appropriate only where the intent of the parties can be ascertained from the face of their agreement" (*Ruttenberg v Davidge Data Sys. Corp.*, 215 AD2d 191, 197 [1st Dept 1995] [internal quotation marks omitted]; *see also NFL Enters. LLC v Comcast Cable Communications, LLC*, 51 AD3d 52, 58, 61 [1st Dept 2008]; *LoFrisco v Winston & Strawn LLP*, 42 AD3d 304, 306-307 [1st Dept 2007]). The intent of the parties as to Merrill Lynch's right to early termination of the hedge agreement in an event of default cannot be ascertained here without resort to extrinsic evidence, and thus the issue is not appropriately resolved on a motion for summary judgment.

With respect to Taberna III, IV and VI, Merrill Lynch is entitled to summary judgment. As discussed above, the Schedules for these three transactions provide that hedge agreements (permitting early termination) prevail over the Indentures (prohibiting early termination).

The motion court incorrectly held that, because part 5 (a) of each Schedule is called "Definitions," section 5 (a) (ii) (which states that the Schedule trumps the Agreement) only applies to inconsistencies in definitions. Section 5 (a) (ii), however, refers explicitly to "inconsistency between the provisions of the Indenture and this Agreement," and section 9 (g) of the Master Agreement provides that headings are for convenience's sake and "are not to affect the construction of" the Agreement. Such inconsistency provisions are frequently enforced by courts (*see e.g. Westfield Family Physicians, P.C. v HealthNow N.Y., Inc.*, 59 AD3d 1014, 1015 [4th Dept 2009], *lv denied* 13 NY3d 703 [2009]; *Alamo Contr. Bldrs. v CTF Hotel Co.*, 242 AD2d 312 [2d Dept 1997]; *Matter of JGA Constr. Corp. v Burns Elec. Co.*, 145 AD2d

---

* As defined in the preamble to the Master Agreement, the hedge agreement includes the Master Agreement, the Schedule, and all Confirmations.

945 [4th Dept 1988]; *Matter of Village of Jordan v Memphis Constr. Co.*, 109 AD2d 1055 [4th Dept 1985]; *Heilig v Maron-Ames*, 25 Misc 3d 838, 841-842 [Civ Ct, Kings County 2009]), including in cases involving ISDA provisions and definitions (*see CIBC Bank & Trust Co. v Credit Lyonnais*, 270 AD2d 138 [1st Dept 2000]). Concur—Tom, J.P., Andrias, Moskowitz, Acosta and Abdus-Salaam, JJ.