Bersin Props., LLC v Nomura Credit & Capital, Inc. (2023 NY Slip Op 00628)

Bersin Props., LLC v Nomura Credit & Capital, Inc.

2023 NY Slip Op 00628

Decided on February 07, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 07, 2023

Before: Renwick, J.P., Gesmer, Moulton, Kennedy, Mendez, JJ. 

Index No. 452630/14 Appeal No. 17264 Case No. 2022-01153 

[*1]Bersin Properties, LLC, Plaintiff-Appellant,
v
Nomura Credit & Capital, Inc. et al., Defendants-Respondents.

Law Office of David Tennant PLLC, Rochester (David H. Tennant of counsel), for appellant.
Greenberg Traurig, LLP, New York (Richard A. Edlin of counsel), for respondents.

Order, Supreme Court, New York County (Robert R. Reed, J.), entered February 8, 2022, which, to the extent appealed from as limited by the briefs, granted defendants' motion for summary judgment dismissing complaint, unanimously affirmed, with costs.
Initially, while plaintiff points to a number of factual issues that it asserts should have prevented summary judgment, such as the progress of the construction work, those issues were immaterial to the disposition of defendants' summary judgment motion.
The motion court properly found that plaintiff's failure to deliver a replacement interest rate cap agreement (IRCA) under the parties' loan agreement in 2009 warranted dismissal of the complaint. Under the loan agreement's plain terms, plaintiff's failure to replace the IRCA prior to the Initial Maturity Date (February 9, 2009) disqualified it from both extending the loan's maturity date and receiving further loan advances. Thus, defendant Nomura Credit & Capital, Inc. could not have breached the contract by deeming the loan to have matured pursuant to its own terms as of the Initial Maturity Date, or by declining to fund the $54 million Draw Request that plaintiff submitted after close of business that same day.
Plaintiff's assertion that the loan agreement's formula for determining the "Strike Price" of the IRCA was fatally flawed with the result that Nomura was required to "negotiate good faith, commercially reasonable IRCAs" each time the IRCA expired is unpersuasive. Plaintiff has not shown that there is any flaw in the loan agreement's Strike Price formula. Plaintiff's unsupported assertion that both parties assumed that the Strike Price would be a positive number each year — and that it was an unforeseen anomaly that the Strike Price formula rendered a negative number in 2008 and 2009 — is also not persuasive. Plaintiff's insistence upon replacing the parties' negotiated Strike Price term with a "commercially reasonable" substitute would render meaningless the Strike Price formula and IRCA requirement in the loan agreement (see Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc., 63 NY2d 396, 403 [1984]). The motion court properly concluded that the duty of good faith and fair dealing cannot create independent contractual rights or nullify express contractual terms (National Union Fire Ins. Co. of Pittsburgh, Pa. v Xerox Corp., 25 AD3d 309, 310 [1st Dept 2006], lv dismissed 7 NY32d 886 [2006]).
While the unexcused failure to deliver a replacement IRCA and extend the Initial Maturity Date was alone sufficient to disqualify plaintiff from receiving any further loan advances, the motion court also considered whether plaintiff's February 9, 2009 $54 million request would have otherwise satisfied the loan agreement's requirements, and properly concluded that it did not. As plaintiff concedes, it advances a new theory for the first time on appeal with respect to its belated $54 million request. While plaintiff previously argued that the $54 million [*2]request was either a "force majeure" request or a "Draw Request" as that term is defined in the loan agreement, on appeal it asserts that it was simply a "written request" that preserved its right to subsequently submit a more formal "Draw Request" meeting the contractual requirements. This unpreserved argument is contrary to the plain terms of the loan agreement.
The motion court also properly found that the $54 million request was not a proper "Draw Request." Multiple sections of the loan agreement directly address the requirements for requesting and receiving loan advances, and require that the expenses have already been incurred before the advance is funded. As such provisions are "complete, clear and unambiguous," they must be enforced in accordance with their plain terms (NFL Enters. LLC v Comcast Cable Communications, LLC, 51 AD3d 52, 58 [1st Dept 2008]).
Finally, the motion court properly found that plaintiff waived its right to recover monetary damages, including lost profits, under the loan agreement. The waiver found in Section 10.12 of the loan agreement plainly applies, as the amended complaint is founded expressly on allegations that Nomura acted unreasonably and in bad faith in violation of alleged contractual and/or legal duties. Regardless, as noted, plaintiff has not established that Nomura acted in bad faith when it insisted on plaintiff's compliance
with the loan agreement's IRCA provision.
We have considered plaintiff's remaining contentions and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 7, 2023