Deutsche Bank Natl. Trust Co. v HSBC Fin. Corp. (2024 NY Slip Op 50512(U))

[*1]

Deutsche Bank Natl. Trust Co. v HSBC Fin. Corp.

2024 NY Slip Op 50512(U)

Decided on May 1, 2024

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 1, 2024
Supreme Court, New York County

Deutsche Bank National Trust Company, 
 Solely in its Capacity as Trustee of HSI Asset Securitization Corporation 
 Trust Series 2007-HE2 (HASC 2007-HE2), Plaintiff,

against
HSBC Finance Corporation, Decision One Mortgage Company, LLC, 
 HSBC Bank USA National Association, Defendant.

Index No. 651627/2013

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 007) 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 225, 228, 229 were read on this motion to DISMISS.
In this residential mortgage-backed securities action, Deutsche Bank National Trust Company ("plaintiff" or "HASC trustee") asserts a failure-to-notify claim (an "FTN claim") against HSBC Finance Corporation, Decision One Mortgage Company LLC and HSBC Bank USA National Association (collectively, "defendants"). In motion sequence 007, defendants move pursuant to CPLR 3211(a)(1) and 3211(a)(7), for an order dismissing with prejudice the FTN claim as asserted in the HASC 2007-HE2 second amended complaint. There is significant overlap between this action and the action captioned U.S. Bank National Association, solely in its capacity as Trustee of the Structured Asset Securities Corporation Mortgage Loan Trust, Series 2007-BC2 (SASC 2007-BC2) v. EquiFirst Corporation and Barclays Bank PLC, Index No. 650692/2013 (the "US Bank action")—in which this court issued a decision on October 27, 2023 (US Bank N.A. v EquiFirst Corp. 80 Misc 3d 1232 [A]). The court respectfully refers the parties to that decision for a rendition of the current action's pertinent facts. In this decision, the court will only address issues not previously reached in the US Bank action.
Here, defendants advance four arguments in favor of dismissing the action. First, defendants argue that plaintiffs' FTN claims are time barred under California's four-year statutory limitation period, and conversely that, plaintiff's FTN claims are time-barred even if this court were to apply the New York's 6-year statutory limitation period. Second, defendants argue that plaintiff's FTN claims are barred by the sole remedies clause in the relevant Pooling and Servicing Agreement (the "PSA"). Third, defendants argue that plaintiff's indemnity claims fail. Finally, defendants argue that plaintiff failed to properly plead its alter ego claims.
On a motion to dismiss pursuant to CPLR 3211, "the pleading is to be afforded a liberal construction" and the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v. Martinez, 84 NY2d 83, 87-88 [1994]). However, though well-pled facts are presumed true, "bare legal conclusions and factual claims, which are either inherently incredible or flatly contradicted by documentary evidence . . . are not presumed to be true on a motion to dismiss for legal insufficiency" (JFK Holding Co., LLC v City of New York, 68 AD3d 477, 477 [1st Dept 2009]; see also Robinson v Robinson, 303 AD2d 234, 235 [1st Dept 2003] ("[O]n a . . . motion to dismiss, the court is not required to accept . . . legal conclusions that are unsupportable based upon the undisputed facts."). On a motion to dismiss based on documentary evidence under CPLR 3211(a)(1), "[i]f documentary proof submitted in support of the motion disproves a material allegation of the complaint, a determination in the defendant's favor is warranted" (Snyder v Voris, Martini & Moore, LLC, 52 AD3d 811, 812 [2d Dept 2008]).
In this court's view, the second amended complaint sufficiently states a claim for the HASC defendants' alleged failure to notify plaintiff of breaches of the R&Ws, per this court's March 7, 2018 Bellwether decision.[FN1]
The second amended complaint contains numerous allegations supporting the inference that the HASC defendants discovered R&W breaches in the years after closing of the securitization—namely, between late 2009 and early-2012. And, although plaintiff disputes the application of the borrowing statute, which would force this court to apply California's four-year limitation period (as opposed to New York's six-year limitation period), since plaintiff's FTN claims are timely under a shorter limitation period (i.e., California's statute), the court need not address the issue of whether the borrowing statute applies.
The HASC trustee filed the initial complaint against the HASC defendants on July 31, 2013, asserting, among other things, FTN claims (see NYSCEF doc. no. 6, complaint at 86, 88). Under the shortest possible statute of limitations accrual period argued by the HASC defendants—that is, four years from the HASC defendants' discovery of R&W breaches—the HASC trustee's action is timely as to all breaches that the HASC defendants discovered, and failed to notify the HASC trustee of, from July 31, 2009 forward. The second amended complaint contains more than ample allegations supporting the inference that the HASC defendants discovered and failed to notify the HASC trustee of R&W breaches between late-2009 and early-2012.
For example, the second amended complaint alleges: "[C]ombined with the pooled risk and audit resources within the HSBC North America corporate family, the movement of mortgage and real estate functions and personnel from HSBC Finance to HSBC Bank in late 2009 and 2010, their possession of and familiarity with the Mortgage Loan files, and the close attention Defendants paid to their R&W exposure between 2011 and 2013 Defendants, on information and belief, each discovered their pervasive R&W breaches with respect to the Mortgage Loans, described supra, years after the Closing Date occurred, triggering their obligations to promptly notify the Trustee of such breaches" (NYSCEF doc. no. 199 at ¶ 67). [*2]These allegations are sufficient to support the inference that the HASC defendants discovered breaches during the relevant period, even under the shortest possible limitations period. Thus, the court rejects defendants' argument that plaintiff's FTN claims are untimely under the four-year limitations period (see Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v DB Structured Prods., Inc., 958 F Supp 2d 488, 497 [SDNY 2013] [denying motion to dismiss because "whether [the Sponsor] knew, or should have known, of these breaches at the time of its review, is a question of fact"]). Discovery is needed to uncover exactly how and when the HASC defendants discovered breaches of the R&Ws.
Defendants also argue that only discoveries made in the window between July 31, 2009 (four years before the HASC trustee first asserted FTN claims on July 31, 2013) and May 4, 2011 (four years after closing on May 4, 2007) will give rise to viable FTN claims. But, in making that assertion, defendants conflate the court's holding in the Bellwether decision as to the timeliness of FTN claims with its explanation of the availability of repurchase damages (59 Misc 3d 754).
In the Bellwether decision, this court, the Hon. Marcy Friedman then presiding, held that FTN claims "will be timely if based on breaches that the defendant discovered within the six-year period immediately preceding the assertion of the failure to notify causes of action" (59 Misc 3d at 777). Addressing the separate issue of whether the trustee had sufficiently alleged damages in the bellwether cases, the court explained that there may be a narrower window when determining the availability of repurchase damages. "[D]amages equivalent to those under the repurchase remedy (repurchase damages) will not be available even for timely brought failure to notify claims, unless they are based on breaches discovered during the six-year period following the date of the closing, while the repurchase remedy remained available to the Trustee . . . If repurchase damages are not recoverable, however, the claims may be maintained at least for nominal damages" (id.). Thus, although the damages available to the HASC trustee might be different during the narrower window described by the court, that measure of recovery is to be determined at a later stage in the proceedings. The variance in potential damages does not impact the viability and timeliness of the FTN claims themselves (see Duross Co. v. Evans, 22 AD2d 573, 574 [1st Dep't 1965] ["[D]efendants' breach of their contract . . . entitles [plaintiff] to damages, the nature and extent of which do not affect the sufficiency of the . . . cause of action."]). Therefore, this court is satisfied that plaintiff's FTN claim as asserted in the second amended complaint is not barred by the statute of limitations—whether California's or New York's.
Defendants further argue that plaintiffs' FTN claims are barred by the sole remedies clause from the PSA. Under the sole remedies clause, and according to defendants' interpretation of the PSA, HSBC Bank can have FTN liability only with respect to the so-called "gap" R&Ws, and plaintiff, according to defendants, did not allege that HSBC Bank has discovered breaches of any gap R&Ws.
In Section 4 of the MLPA, HSBC Bank made a series of loan-level representations. That section also requires HSBC Bank to give notice upon its "discovery" of a breach of one of its representations, but only if that breach "does not also constitute a breach of a representation or warranty of the applicable" originator (HE2-MLPA § 4.) In other words, in defendants' reading, HSBC Bank has notification obligations under the MLPA only for "gap" representations for which it has liability, not for representations also made by loan originators. Moreover, in section 2.03 of the PSA, HSBC Bank agrees to provide notice "upon discovery" of the breach of any of [*3]its representations (gap or non-gap), but the "sole remedies" provided are cure or repurchase on gap representations for which HSBC Bank is responsible. According to defendants, the typical "sole remedies" clause confines a trustee to cure or repurchase only for R&W claims. By contrast, the sole remedies clause in the PSA for HASC 2007-HE2 allegedly has no such scope limitation and must be enforced to bar FTN claims except on gap R&Ws.
This court disagrees with defendants' reading of the PSA. The HASC PSA does not purport to limit FTN claims to the sole remedy for gap R&W breaches, nor could it by its plain language, since HSBC Bank's notification obligation expressly extends to all R&Ws, not just gap R&Ws. While HSBC Bank's repurchase obligation extends only to its "gap" R&Ws, and the sole remedies available against HSBC Bank for a breach of any of those "gap" R&Ws are cure, repurchase, or substitution of a breaching loan, HSBC Bank's notification obligation, by its express language, is not so limited. Indeed, HSBC Bank's notice obligation under the HASC PSA explicitly extends to the breach of "any" R&W by HSBC Bank, as follows: "Upon the discovery by [HSBC Bank] of a breach of any of the Sponsor's representations and warranties set forth in Section 4 of the [HASC MLPA], [HSBC Bank] shall give prompt written notice to [the HASC Trustee ]" (HASC PSA § 2.03[d]). The HASC PSA does not, by its express terms, include FTN breaches within the sole remedy provision. It simply limits HSBC Bank's liability for breaches of R&Ws not "also made by" Decision One (ie., "gap" R&Ws) to "cure, repurchase or substitut[ion]" of the breaching loan.
The reading suggested by the HASC defendants is contrary the parties' express contractual language (see Beal Sav. Bank v. Sommer, 8 NY3d 318, 324 [2007] ["[t]he court should construe the agreements so as to give full meaning and effect to the material provisions"], NFL Enters. LLC v. Comcast Cable Commc'n, LLC, 851 NYS2d 551, 557 [1st Dept 2008] ["The use of different terms in the same agreement strongly implies that the terms are to be accorded different meanings"]). Accordingly, HSBC Bank's argument fails.
Defendants also seek to dismiss plaintiff's cause of action for declaratory judgment requesting an order directing Decision One to indemnify plaintiffs against "all losses" caused by breaches of the duty to notify — which would cover attorneys' fees and litigation expenses. Defendants argue that the indemnity claims must be dismissed as duplicative of the breach of contract cause of action, as well as for the reasons stated in the Part 60 coordinated briefing.
Defendants are correct on this point and plaintiff's cause of action for indemnification is dismissed. The indemnity claim against HSBC Bank fails because HSBC Bank's indemnity obligation is expressly limited to "any third-party claim, defense, demand or assertion based on, or grounded upon, or resulting from, a breach by [HSBC Bank] of its representations and warranties or obligations" (HE2-PSA § 2.03[b]) Here, plaintiff does not allege any such third-party claims.
The indemnity claim against Decision One also fails. As any initial matter, FTN claims fall outside the scope of Decision One's duty to indemnify. Under the Transfer Agreement, Decision One is obligated to indemnify plaintiff for certain losses only if they are "based on or grounded upon, or resulting from, a breach of [Decision One's] representation and warranties" (HE2-Transfer Agreement § 7.03.) While an FTN claim is related to representations and warranties, it cannot be "based on or grounded upon, or resulting from" a breach of representations and warranties, for the "sole remedy for breaches of representations and warranties expired with the statute of limitations applicable to such breaches" (Bellwether opinion, 59 Misc 3d at 786). Instead, assuming an FTN claim is valid, it must be based on the [*4]independent duty to give notice.
Separately, plaintiff asserts alter ego claims against HSBC Finance—Decision One's grandparent. These claims fail as a matter of law. Paragraphs 60 and 61 of the second amended complaint allege common addresses and some shared managers. The North Carolina Supreme Court, however, explicitly provides that a subsidiary and its parent ordinarily each remain "a distinct legal entity" even if they "have common officers" and "occupy common offices" (Huski-Bilt, Inc. v First Citizens Bank & Trust Co., 157 SE2d 352, 358 [NC.1967]). As the United States Supreme Court has observed, "it is 'normal' for a parent and subsidiary to 'have identical directors and officers,'" and "directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership" (United States v Bestfoods, 524 US 51, 69 [1998]). Thus, "that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts" (id.).
Beyond that, there are none of the allegations commonly seen in successful alter ego pleadings. There is not even a conclusory allegation that Decision One was a sham, let alone facts to support such a conclusion. There is no conclusory allegation that Decision One was undercapitalized or denuded of capital, let alone facts to support such a conclusion. And there is no effort whatsoever to establish the wrongful act and proximate cause elements of the North Carolina standard. Accordingly, the alter ego allegations as alleged against HSBC Finance are rejected as insufficient.
Accordingly, it is
ORDERED that defendants' motion to dismiss is denied insofar as defendants seek dismissal on the basis that plaintiff's FTN claims are untimely; and it is further
ORDERED that defendants' motion to dismiss is granted insofar as defendants seek to dismiss plaintiff's cause of action for indemnification of attorneys fees and litigations costs; and it is further
ORDERED that that defendants' motion to dismiss is granted insofar as defendants seek to dismiss alter-ego allegations as asserted against HSCBC Finance.
Dated: May 1, 2024
Robert R. Reed, J.S.C.

Footnotes

Footnote 1: See Fed. Hous. Fin. Agency for Fed. Home Loan Mortg. Corp. v Morgan Stanley ABS Capital I Ins., 59 Misc 3d 754 (Sup Ct NY Cty 2018)(Hon. Marcy Friedman, J.S.C.)("Bellwether decision").