**Wedel Software USA Inc. v Miracle Channel Assn.**

2024 NY Slip Op 31956(U)

June 5, 2024

Supreme Court, New York County

Docket Number: Index No. 656469/2020

Judge: Verna L. Saunders

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. VERNA L. SAUNDERS, JSC**          PART    36
                                              *Justice*

-------------------------------------------------------------------X    INDEX NO.          656469/2020

WEDEL SOFTWARE USA INC.,
                                   Plaintiff,                      MOTION SEQ. NO.          006

                    - v -
                                                                  **DECISION + ORDER ON**
THE MIRACLE CHANNEL ASSOCIATION,                                  **MOTION**
                                   Defendant.

-------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 006) 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 129, 130

were read on this motion to/for          **SUMMARY JUDGMENT**          .

In this action seeking damages for breach of contract for the licensing of a television broadcast information software system to a television broadcaster, defendant moves pursuant to CPLR 3212 for summary judgment (i) dismissing the complaint; (ii) granting judgment in its favor on its counterclaims; and (iii) for judgment on its first and third counterclaims, in the total amount of $83,451.00, plus prejudgment and post-judgment statutory interest (NYSCEF Doc. No. 91). Plaintiff opposes the motion, arguing that triable issues of fact preclude summary judgment. The motion is denied.

Plaintiff, Wedel Software USA Inc. ("Wedel"), is a software company duly formed and existing under the laws of the State of Delaware and is registered as a foreign corporation in the State of New York that owns and licenses television broadcast information software systems to television broadcasting companies (NYSCEF Doc. Nos. 94 at ¶ 1; NYSCEF Doc. No. 95 at ¶ 1; *Wedel affirmation* [NYSCEF Doc No. 124] at ¶ 3). Wedel's software system is a traffic and billing system that does ad trafficking and has been implemented and utilized globally by major broadcast companies for over thirty years (*Wedel affirmation* at ¶¶ 3-5). Defendant, The Miracle Channel Association ("Miracle Channel"), is a television broadcasting company duly formed and existing under the laws of Canada (NYSCEF Doc. No. 94 at ¶ 2; NYSCEF Doc. No. 95 at ¶ 2).

Wedel and Miracle Channel entered into a license agreement comprised of two contracts, a "License Agreement" and "License Agreement 'Mediasales Software'" (collectively, 'License Agreement") on May 22, 2018, pursuant to which Wedel licensed the use of its Media Sales Traffic software to Miracle Channel (NYSCEF Doc. No. 100 at ¶ 3; *Wedel affirmation* at ¶ 6-7). As an add-on, Wedel agreed to Miracle Channel's request to create a log-generating module suitable for meeting the reporting standards established by the Canadian Radio Television Telecommunications Commission ("CRTC") (*Wedel affirmation* at ¶ 9). The software was to be fully operational by September 1, 2018 (NYSCEF Doc. No. 95 at ¶ 9).

Miracle Channel terminated the contract with Wedel on or about July 10, 2020 (NYSCEF Doc. No. 94 at ¶ 9; NYSCEF Doc. No. 95 at ¶¶ 5, 15). Wedel sued for breach of contract seeking $36,917.10 in damages, alleging that Miracle Channel unilaterally terminated the License Agreement and stopped paying the licensing fee in violation of the License Agreement (NYSCEF Doc. No. 94 at ¶¶ 8, 15). Wedel asserts that Miracle Channel's grounds for terminating the License Agreement are "unjustified" and any "alleged failure to provide software functionality, customized software development, and software enhancements" is incorrect as these requirements were never agreed to in the License Agreement and were outside the agreement's scope (*id.* at ¶ 10).

Miracle Channel denies the allegations and counterclaims that the software provided by Wedel under the License Agreement was faulty, entitling Miracle Channel to cancel or terminate the License Agreement with Wedel and to withhold further payment of the licensing fee (NYSCEF Doc. No. 95 at ¶¶ 9, 21). Miracle Channel asserts that from September 2018 to February 2020 it attempted to utilize the software but found the system was incapable of meeting the conditions set forth by the CRTC for licensing, requiring correction by Miracle Channel (*id.* 95 at ¶¶ 8, 14). Miracle Channel seeks damages for the monthly fees pursuant to the License Agreement, from 2018 to 2020, totaling $18,768.00 (*Lister affidavit* [NYSCEF Doc No. 100] at ¶ 14). Miracle Channel also seeks recovery of the "First Time Purchase" price under the agreement of $9,800.00, as well as, the costs for Miracle Channel to hire extra staff to correct the software's deficiencies in the amount of $54,883.00 (*id.* at ¶¶ 15-16).

Miracle Channel contends that Wedel violated Clause 7.1 of the License Agreement which provides that, "Wedel Software guarantees that the software it has supplied under this agreement shall function properly, meaning that it shall operate according to its functionality and according to the written specification provided, during the terms of this contract…." (NYSCEF Doc. No. 96 at 3; NYSCEF Doc. No. 93 at ¶¶ 21(ii), 24).

Miracle Channel asked Angela Eechaute ("Eechaute"), a Scheduling and Compliance Coordinator with over thirty years of experience in programming and compliance in television in Canada, to opine on whether the Wedel Software Mediasales Traffic software functioned properly (NYSCEF Doc. No. 97). Eechaute concluded that the Wedel Software Mediasales Traffic Software and the custom CRTC add-on failed to fulfill its "essential purpose in providing a programming system for a Canadian Television Station" (*id.* at ¶ 28). Thomas Lister, Director of Operations with Miracle Channel and a signatory on the License Agreement, avers that Miracle attempted to use the software but had to forego it because the software failed to operate properly (*Lister affidavit* at ¶ 5). He asserts that the software "did not function with its essential purpose, in that it broke timing, segmented programs, and added an extra hour of breaktime on every playlist" (*id.* at ¶ 12).

Wedel disputes Eechaute's qualification to evaluate its software, challenging the relevancy of her work experience and training (NYSCEF Doc. No. 121 at 5; *Wedel affirmation* at ¶¶ 27, 29). Plaintiff further challenges Eechaute's conclusions that the software did not function properly (NYSCEF Doc. No. 121 at 6-7; *Wedel affirmation* at ¶¶ 31-49). Wedel contends that any infirmity is based on Miracle Channel's failure to properly vet the system prior to purchasing it and failing to determine whether the software would be able to meet Miracle Channel's

**656469/2020 WEDEL SOFTWARE USA INC. vs. THE MIRACLE CHANNEL**
**Motion No. 006**

**Page 2 of 7**

2 of 7

particular needs (NYSCEF Doc. No. 121 at 2-4). Per Wedel, the essential purpose of Wedel's Mediasales Traffic and Billing software was to use "as aired" data generated by Miracle Channel's Playbox software, which Miracle Channel licensed from another vendor (*id.* at 6).

Wedel secured its own expert, Peter Kluyver ("Kluyver"), the Managing Director of Itego Holding B.V., an IT company based in the Netherlands specializing in IT and broadcast systems for radio and television broadcasters throughout Europe (NYSCEF Doc. No. 105). Kluyver concluded that the software system was technically functional, but Miracle Channel's frequent staff changes, "stalling" or "over questioning" prevented it from implementing the software system despite numerous training sessions and assistance from Wedel staff (*id.* at 12, 35, 40, 44).

Raoul Wedel, the owner of Wedel, avers that contrary to Miracle Channel's contention, "Wedel never agreed that its software would replace any of Miracle's data collection or data conversion processes. Instead, the purpose of Mediasales was to organize the data that Miracle's employees collected and entered into the appropriate tables in the Mediasales relational database" (*Wedel affirmation* at ¶ 14). He affirms that Miracle Channel postponed the "go live" date approximately twelve times and never completed a full live month on the system or submitted a log to the CRTC for review (*id.* at ¶¶ 20, 23, 40). Mr. Wedel attributes Miracle Channel's failure to implement the software with inadequate staffing, a high employee turnover rate and lengthy transition process, as well as, the provision of flawed information (*id.* at ¶¶ 20-22, 25-26).

Eechaute supplemented her expert report noting various deficiencies in Kluyver's expert report, criticizing Kluyver's methodology and lack of qualifications to render an opinion on the Mediasales software system (NYSCEF Doc. No. 98).

A movant seeking summary judgment pursuant to CPLR 3212 in its favor "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). The evidentiary proof tendered must be in admissible form (*see Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065, 1067 [1979]). "This burden is a heavy one and on a motion for summary judgment, 'facts must be viewed in the light most favorable to the non-moving party'" (*William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh*, 22 NY3d 470, 475 [2013] [citation omitted]), "and every available inference must be drawn in the [non-moving party's] favor" (*De Lourdes Torres v Jones*, 26 NY3d 742, 763 [2016]). Once met, this burden shifts to the opposing party who must then demonstrate the existence of a triable issue of fact (see *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). If the existence of an issue of fact is even arguable, summary judgment must be denied (*Phillips v Kantor & Co.*, 31 NY2d 307, 311 [1972]; *Museums at Stony Brook v Village of Patchogue Fire Dept.*, 146 AD2d 572, 573 [2d Dept 1989]). Indeed, "[w]here different conclusions can reasonably be drawn from the evidence, the motion should be denied" (*Sommer v Federal Signal Corp.*, 79 NY2d 540, 555 [1992]; *accord Jaffe v Davis*, 214 AD2d 330, 330 [1st Dept 1995] [denial required where conflicting inferences may be drawn]).

Miracle Channel's motion for summary judgment to dismiss Wedel's breach of contract claim is denied. The evidence submitted raises a triable issue of fact regarding who breached the

656469/2020  WEDEL SOFTWARE USA INC. vs. THE MIRACLE CHANNEL
Motion No. 006

Page 3 of 7

3 of 7

contract between the parties first. Miracle Channel contends that plaintiff breached the License Agreement first because Wedel allegedly failed to provide functioning software under the License Agreement and thus, Miracle Channel argues it was entitled to terminate or discontinue the License Agreement (NYSCEF Doc. No. 93 at ¶¶ 12, 17).

The elements of a breach of contract claim are the formation of a contract, plaintiff's performance under the contract, defendant's breach thereof, and damages as a result (see *Belle Light. LLC v Artisan Constr. Partners LLC*, 178 AD3d 605, 606 [1st Dept 2019]). A party may unilaterally terminate a contract where the other party has breached and the breach is material (*see Exportaciones Del Futuro Brands, S.A. De C.V. v Authentic Brands Group, LLC*, 201 AD3d 499, 500 [1st Dept 2022] ["[a]s a result, plaintiff's breaches of the agreement substantially defeated the parties' contractual objective and constituted material breaches, thus justifying defendants' termination of the contract" [internal quotation marks omitted]). Indeed, the non-breaching party is discharged from performing any further obligations under the contract and can terminate the contract, sue for damages, or continue the contract (*Awards.com v Kinko's, Inc.*, 42 AD3d 178, 188 [1st Dept 2007] ["[w]hen a party materially breaches a contract, the non-breaching party must choose between two remedies: it can elect to terminate the contract or continue it. If it chooses the latter course, it loses its right to terminate the contract because of the default"], *affd* 14 NY3d 791 [2010]).

Miracle Channel admits to breaching the License Agreement in July 2020 but argues that its termination was justified since Wedel breached the License Agreement first (*Lister affidavit* at ¶ 7). Miracle Channel contends that the software did not function as required, violating the License Agreement. In support, Miracle Channel relies on the expert report from Eechaute that the software "was not fit for its particular purpose in providing a serviceable software system for a Canadian Television station" (NYSCEF Doc. No. 97 at ¶ 6 (b)). Miracle Channel argues that Eechaute's report concluding that the Wedel Software was incapable of functioning for its essential purpose is sufficient for the court to grant its motion for summary judgment (NYSCEF Doc. No. 93 at ¶¶ 6-7, 21, 26, 33, 42, 54-55). Miracle Channel repeatedly argues that Eechaute's conclusions are undisputed as Wedel's expert report is unsworn and thus, not admissible evidence (*id.* at ¶¶ 3-4, 37, 41, 50).

In opposition, Wedel disputes Miracle Channel's contentions that the software was faulty. Wedel contends that Miracle Channel did not properly vet the software system prior to purchasing it, failing to confirm that the software would be able to meet Miracle Channel's particular needs despite participating in demonstrations and reviews (NYSCEF Doc. No. 121 at 2-4, 6). Further, Miracle Channel continually postponed the "go live" date and any evaluation by Eechaute of the system's functionality is flawed because she lacks the necessary work experience and was never trained by Wedel on how to use it (*id.* at 4-7). According to Wedel, Miracle Channel's implementation was flawed.

Wedel relies on the report of its expert witness, Kluyver who concluded that, based on the information provided by Wedel, there was no technical reason for Miracle Channel to delay going live with the software (NYSCEF Doc. No. 105 at 35, 40, 44). However, this reliance is misplaced. Miracle Channel correctly argues that the unsworn report of Wedel's expert witness does not constitute evidence in admissible form on a motion for summary judgment (*Rue v*

**656469/2020 WEDEL SOFTWARE USA INC. vs. THE MIRACLE CHANNEL**
Motion No. 006

Page 4 of 7

4 of 7

*Stokes*, 191 AD2d 245, 246–247 [1st Dept 1993] ["Unsworn reports, letters, transcripts and other documents do not constitute evidentiary proof in admissible form and may not be considered in opposition to a motion for summary judgment."] [citation omitted]).

Wedel also relies on the averments of Raoul Wedel, the owner of Wedel, that Wedel's software systems are known as a "Traffic and Billing" system which does ad trafficking such as scheduling ads and connecting the right ads to the right orders and then transmitting a bill for that service to the customer (*Wedel affirmation* at ¶ 5). He contradicts the conclusions drawn by Eechaute about the functionality of the software, asserting that any deficiency in the software is attributable to Miracle Channel's actions and not a fault of the software system (*id.* at ¶¶ 16-18, 21, 22, 24-25). Mr. Wedel affirms that it was Miracle Channel's implementation that was flawed causing it to postpone the "go live" date approximately twelve times and never completing a full live month on the system to submit a log to the CRTC for review (*id.* at ¶¶ 20, 23, 40).

Mr. Wedel's assertions in opposition to defendant's motion for summary judgment sufficiently raise a triable issue of fact as to whether Wedel satisfactorily performed pursuant to the agreement's terms (*Zuckerman*, 49 NY2d at 563 [affidavit from plaintiff could be acceptable evidence to demonstrate existence of material issues of fact]). The credibility of the plaintiff's assertions is not for the court to determine, but rather for a jury to resolve at trial [*Encalada v McCarthy, Chachanover & Rosado, LLP*, 160 AD3d 475, 476 [1st Dept 2018] [contradictory statements raise credibility issues that cannot be resolved on a motion for summary judgment] [citations omitted]).

Here, the parties disagree as to whether Wedel fulfilled its obligations pursuant to the License Agreement. Miracle Channel contends that Wedel did not. Wedel asserts differently that it was Miracle Channel's implementation which was flawed. Accordingly, the parties' presentation of competing contentions about the functionality of the Mediasales software system requires denial of defendant's summary judgment motion. (See *Super PC Systems, Inc. v Kaitryanna Pizza Inc.*, 2022 NY Slip Op 30218(U), **12 [Sup Ct, NY County 2022] ["[t]he parties' competing contentions regarding the extent to which the POS [point of sale] system was faulty, and the extent to which it was required to operate, is a triable issue that precludes summary judgment"] [citations omitted]); *Schroders, Inc. v Hogan Sys.*, 137 Misc 2d 738, 741 [Sup Ct, NY County 1987] [parties' disagreement as to whether plaintiff fulfilled its obligations pursuant to the parties' contract for delivery and installation of a computer software system precluded summary judgment]).

A triable issue of fact also exists as to whether the functionality or lack thereof constituted a breach of the express warranty set forth in the License Agreement. The evidence submitted relating to whether the Medialsales software is functional is conflicting. The parties dispute what the term "essential function" of the system means and disagree as to the functionality of the system.

The material elements for breach of express warranty include (1) a material representation expressly made about the product by the seller, (2) the truthfulness of this representation was relied upon by the buyer, (3) the product did not live up to the representation and (4) the buyer suffered damages as a result of a breach of the express warranty. (See *CBS v*

**656469/2020 WEDEL SOFTWARE USA INC. vs. THE MIRACLE CHANNEL**
Motion No. 006

Page 5 of 7

5 of 7

*Ziff-Davis Publ. Co.*, 75 NY2d 496, 503 [1990].) For an express warranty to exist, there must be an affirmation of fact or promise that induced the buyer, and the buyer must set forth the terms of the alleged express warranty with sufficient particularity. (See *Hicksville Dry Cleaners, Inc. v Stanley Fastening Sys., L.P.*, 37 AD3d 218, 218 [1st Dept 2007]; *Friedman v Medtronic, Inc.*, 42 AD2d 185, 190 [2d Dept 1973].)

Miracle Channel argues that Wedel breached the warranty of merchantability under the License Agreement that the software be fit for its intended purpose (NYSCEF Doc No. 93 at ¶ 19). Miracle Channel argues that the terms of the express warranty are material representations about the functionality of the Wedel software (*id.* at ¶ 25). In opposition, Wedel contends that Miracle Channel fails to satisfy the first element of the claim for a breach of express warranty as defendant failed to identify the material representation expressly made about the software (NYSCEF Doc. No. 121 at 4). Wedel argues that "there is no allegations whatsoever that Wedel made any false or misleading statements about its Mediasales software or the CRTC add-on" (*id.* at 2). Wedel argues that Wedel never guaranteed that the software would perform "according to its functionality" and "would function for its essential purpose" and, in any event, these phrases are so vague and ambiguous that extrinsic evidence is needed to explain their meaning (*id.* at 4).

In reply, Miracle Channel disputes that there is any vagueness or ambiguity to be resolved (NYSCEF Doc. No. 129 at ¶¶ 4-9). Miracle Channel counters that Wedel has failed to identify any allegations or facts to show that the parties did not have a meeting of the minds as to the meaning of the words contained in the contract about the deliverables in the License Agreement (*id.* at ¶ 6). Miracle Channel additionally argues that Wedel fails to show that there was any modification to the written terms or challenge the authenticity of the License Agreement (*id.* at ¶ 10). Miracle Channel further argues that the contract deliverables are laid out in the License Agreement, no additional features were expected and there is no need to use extrinsic evidence to determine the meaning of the contract terms (*id.* at ¶¶ 11-12).

Miracle Channel fails to adequately rebut Wedel's assertion that the warranty in the License Agreement is ambiguous. Clause 7.1 of the parties' agreement provides that plaintiff was to deliver a product that "shall function properly, meaning that it shall operate according to its functionality and according to the written specifications provided" (NYSCEF Doc. No. 96 at 3). This language creates an ambiguity, because it is subject to different interpretations *(Nagel v Nagel*, 52 AD3d 258, 259 [1st Dept 2008] [contract ambiguous where more than one reasonable interpretation]). There is no showing that Miracle Channel's interpretation of the warranty is the only reasonable construction. (See *Credit Suisse Sec. (USA) LLC v Ask Jeeves, Inc.*, 71 AD3d 590, 590 [1st Dept 2010] [affirming trial court's denial of defendant's motion for summary judgment as "[t]he agreement between the parties was ambiguous, with each side offering its own reasonable interpretation"] [citations omitted].

Miracle Channel's reliance on Eechaute's report detailing her evaluation of the system's functionality is misplaced as the report does not conclusively resolve the dispute as to the parties' understanding of the functionality of the system. Mr. Lister, the Director of Operations for Miracle Channel, avers that "[w]hen Miracle Channel entered into the License Agreement, they relied on the express warranty in the License Agreement that the software would function for its essential purpose and that the [sic] all the contract deliverables would be met" (*Lister*

**656469/2020 WEDEL SOFTWARE USA INC. vs. THE MIRACLE CHANNEL**
**Motion No. 006**

Page 6 of 7

6 of 7

*affidavit* at ¶ 4). Mr. Lister provides a list of items that Wedel failed to deliver (*id.* at ¶¶ 8, 10, 12), none of which were specifically contained in the License Agreement (*see* NYSCEF Doc. No. 96 *generally*). Although he is a signatory on the License Agreement, Mr. Lister's affidavit fails to detail the parties' negotiations concerning the software's specification and criteria or adequately explain the parties' intentions.

Mr. Wedel's affirmation provides more insight into the parties' negotiations and intentions (*Wedel affirmation* at ¶¶ 8-9, 12, 14). He asserts that the allegedly missing features were optional and never a part of the discussions nor the requirements requested by Miracle Channel, that the software is a traffic and billing system, and that Miracle Channel needed a more expensive and feature-laden system to function as it wanted (*id.* at ¶¶ 5, 35-36). Mr. Wedel avers that the features in dispute are not essential functions of any traffic and billing system (*id.* at 36). He not only disputes Mr. Lister's version of what the deliverables of the License Agreement required, but he also challenges Eechaute's evaluation of the software and contends that she is not qualified to opine on the functionality of the software as the software never went live (*id.* at ¶¶ 27-49).

Here, the parties advocate materially different interpretations of the key language of the License Agreement; therefore, summary judgment must be denied. The intent of the parties and surrounding circumstances of the entire transaction between the parties are not clear from the License Agreement alone *(see American Express Bank v Uniroyal, Inc.*, 164 AD2d 275, 277 [1st Dept 1990] [triable issue where necessary to refer to extrinsic facts to determine parties' intent]). And, the evidence presented is insufficient to resolve the ambiguity as a matter of law (see *NFL Enters. LLC v Comcast Cable Communications, LLC*, 51 AD3d 52, 61 [1st Dept 2008] [triable issues of fact existed concerning the terms of parties' negotiation and affiliation agreements precluding summary judgment, and the parol evidence submitted failed to eliminate the ambiguity], *quoting Pepco Constr. of N.Y., Inc. v CNA Ins. Co.*, 15 AD3d 464, 465 [2d Dept 2005] [ambiguous contract terms preclude summary judgment]). Accordingly, it is hereby

**ORDERED** that the defendant's motion pursuant to CPLR 3212 for summary judgment is denied in its entirety; and it is further

**ORDERED** that, within twenty (20) days after this decision and order is uploaded to NYSCEF, counsel for plaintiff shall serve a copy of this decision and order, with notice of entry, upon defendant.

| June 5, 2024 | | HON. VERNA L. SAUNDERS, JSC |
|---|---|---|

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

656469/2020  WEDEL SOFTWARE USA INC. vs. THE MIRACLE CHANNEL
Motion No. 006

Page 7 of 7

7 of 7